UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AUSTIN REEVES, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | |
| § | |
| C. A. FRANEY; § | |
| M. HERNANDEZ; § | Civil Action No. 3:18-CV-03232-X |
| E. CASTELLANOS; § | |
| D. CARSON; § | |
| NEAL CAMPBELL; and § | |
| CITY OF GARLAND, § | |
| § | |
| *Defendants.* § | |

### MEMORANDUM ORDER AND OPINION

Plaintiff Austin Reeves alleges that a number of officers used excessive force against him in an incident at the Garland Detention Center. He also alleges they made patently false representations that ultimately led to him being charged and prosecuted on false charges. Reeves sued the officers and the City of Garland under 42 U.S.C § 1983. Before the Court are three ripe motions. Officers Franey, Castellanos, Hernandez, and Carson filed a Motion for Summary Judgment [Doc. No. 69]. Both Officer Campbell [Doc. No. 91] and the City of Garland [Doc. No. 86] filed separate Motions to Dismiss for Failure to State a Claim. The Court **GRANTS** the Motion for Summary Judgment, concluding that the officers' conduct did not violate Reeves's constitutional rights. Because this conclusion also resolves the claims against the City, the Court **GRANTS** the motion to dismiss as well. Finally, the

1

Court refrains from ruling on Officer Campbell's motion to dismiss but will allow him to file a motion for summary judgment.

## I. Facts

Many of the facts here are undisputed. Garland Police Department Patrol Officer Franey was dispatched to a domestic disturbance call. At the scene, bystanders informed Officer Franey that a man hit his girlfriend and fled, but the girlfriend refused to give a statement. While Officer Franey remained on the scene, Austin Reeves returned to the dispatch location. Reeves matched the description of the suspect and had visible scratches and marks on his chest, neck, and back, which appeared to be from a recent altercation. Reeves told officer Franey that his girlfriend lived at the dispatch location and that he returned to get his phone. Officer Franey then initiated a background check, which reflected that Reeves had an outstanding City of Dallas warrant for public intoxication. Officer Franey arrested Reeves and transported him to the Garland Detention Center. At the detention center, Reeves called his girlfriend using the center's telephone. Reeves began arguing with her and became so upset that he slammed the phone into its base, breaking the phone.

This is where the parties' stories begin to differ. After breaking the phone, the defendant officers claim they instructed Reeves to return to his cell. But Reeves ignored the officers' instructions, walked away from his cell, and spontaneously slammed both arms and his head against the glass cell pod door. Feeling the necessity to maintain control, Officers Carson and Castellanos approached and confronted Reeves. The officers then claim that Reeves lunged at Officer Castellanos,

striking her in the chest and knocking her to the ground. Officer Castellanos tore her MCL in the fall. Reeves next turned and "squared up" to fight the other officers.

The officers engaged Reeves and brought him to the floor, where Reeves remained on his hands and knees in what the officers categorized as an attempt to get back to his feet. The officers claim that Reeves remained in this position despite their attempts to wrestle control of his arms and legs, and their several commands to stop resisting and get on the ground. Two officers then delivered what they identify as "trained strikes" to Reeves's legs and neck/shoulder region to stun him and regain control. Reeves reportedly kicked Officer Carson in the face during this struggle, which caused minor bleeding. Eventually the officers secured and cuffed Reeves's limbs, at which point the trained strikes ceased.

Reeves, however, has a somewhat different story. Although admitting to hitting the pod door with one hand (but not his head or the other hand), Reeves claims he otherwise obeyed the officers' directions and was returning to his cell until the officers tackled him. Reeves denies striking Officer Castellanos, claiming she merely fell in the fray. He also denies attempting to fight the officers or kicking Officer Carson. Reeves further denies trying to "stand back up" after being tackled and maintains that he only remained on his hands and knees to protect his face from smashing against the floor. Finally, Reeves denies being told to "stop resisting" or "get on the ground" and instead claims the officers "thoroughly beat" him until he collapsed to the floor.

Officer Franey, who was not present during the detention center altercation,

later prepared an affidavit of probable cause that included these events. To do so, Officer Franey reviewed security video footage of the incident and interviewed officers Hernandez, Castellanos, and Carson, who described the events as they have in this case. Officer Franey presented the affidavit to a magistrate judge to determine probable cause, and Reeves was later charged two counts of assault on a public servant for striking Officer Castellanos and kicking officer Carson. These two charges were later dropped. Detention Center staff took Reeves to Baylor, Scott & White Medical Center the following day where he was diagnosed with leg and wrist contusions and proscribed Motrin.

## II. Legal Standards

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[2] Courts "resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[3] Thus, "the nonmoving party

---

[1] FED. R. CIV. P. 56(a).

[2] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (alteration in original) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[3] *Antoine v. First Student, Inc.,* 713 F.3d 824, 830 (5th Cir. 2013).

cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."[4]

But qualified immunity affects that typical process. The purpose of qualified immunity is to protect government officials from suit and liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[5] Thus qualified immunity "alters the usual summary judgment burden of proof."[6] Courts continue to draw all factual controversies in favor of the nonmovant, but once a government official asserts the defense of qualified immunity the burden shifts to the plaintiff to show that the defense is not available.[7] A plaintiff seeking to defeat qualified immunity must show genuine disputes of material fact about whether: (1) the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.[8] The Fourteenth Amendment's due process clause protects State-level pretrial detainees, and the Fifth, Fourth, and Eighth Amendments protect incarcerated convicts from excessive force.[9] Thus, the Court must determine whether, viewing the summary judgment evidence in the light most favorable to Reeves, the individual defendants violated

---

[4] *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quotation marks omitted).

[5] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[6] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

[7] *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

[8] *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)

[9] *DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 200 (1989) (Fourth Amendment); *Hudson v. McMillian*, 503 U.S. 1, 2 (1992) (Eighth Amendment); *Kingsley v. Hendrickson*, 576 U.S. 389, 391 (2015) (Fourteenth Amendment).

Reeves's constitutional right to be free from excessive force, and whether the defendants' actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.[10] This is a high hurdle because qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[11]

### III. Application

#### A. The Detention Center Security Footage

The Fifth Circuit recently reaffirmed that courts "need not accept a plaintiff's version of the facts 'for purposes of [qualified immunity] when it is "blatantly contradicted" and "utterly discredited" by video recordings.'"[12]

Here, Reeves claims that he did not attack the detention officers, followed all orders, and, aside from breaking the facility telephone and spontaneously smashing his fists against the A-Pod door, generally conducted himself in a manner that posed no security risk or physical threat to jail staff. The video footage, however, shows otherwise. After smashing his arms and face off the glass pod wall, the video shows Reeves continue walking past the open A-Pod door the officers were directing him to enter. Next, Officers Castellanos and Carson move to confront Reeves. A struggle then ensues and the video captures Reeves's outstretched arm connecting with Officer Castellanos's chest as she is knocked off her feet. The next few frames show Reeves turning to face the rest of the officers and moving backwards for several feet over

---

[10] *Kingsley*, 576 U.S. at 391–92.

[11] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[12] *Garza v. Briones*, 943 F.3d 740, 744 (5th Cir. 2019) (quotation marks omitted).

several seconds before the entire group falls into a pile on the floor. The footage then shows Reeves kneeling with his hands and knees tucked underneath him while officers attempt to wrestle his limbs and force him flat onto the floor. Meanwhile the officers are heard giving multiple commands to "stop resisting" and "get on the ground." They also deliver knees, kicks, and strikes to Reeves's body. All strikes cease as soon as Reeves is brought flat onto the floor with his arms and legs held by officers.

Far from the unprovoked use of force alleged by Reeves, the footage is consistent with the officers' account that Reeves refused the order to return to his cell, punched Officer Castellanos, and then turned to fight the other officers before being brought to the ground. The video footage blatantly contradicts Reeves's account, and accordingly the Court need not credit Reeves's account as true.[13]

### B. Excessive Force

The remaining issue is then whether the officers' use of force under these circumstances amounts to a violation of Reeves's 14th Amendment right to be free from excessive force while awaiting trial.[14] An actionable claim that detention officers used excessive force in violation of a pre-trial detainee's Fourteenth Amendment rights must demonstrate only that officers purposefully or knowingly used force that was objectively unreasonable.[15] A court, however, "cannot apply this

---

[13] *Garza*, 943 F.3d at 744.

[14] *Kingsley*, 576 U.S. at 396–97.

[15] *Id.*

standard mechanically."[16]   Objective reasonableness "turns on the facts and circumstances of each particular case," and must be determined "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 hindsight."[17] Since these types of cases typically involve jail facilities and detention centers, "a court must also account for the legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in th[e] judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security."[18] Finally, the Supreme Court's non-exhaustive list of factors for assessing reasonableness includes: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting.[19]

Here, applying the *Kingsley* factors establishes that the officers' use of force was not "objectively unreasonable." First, there is a reasonable relationship between the need for force and the force used. Reeves was unsecured, refusing commands to return to his cell, attacking officers, and resisting restraint. In response, officers

---

[16] *Id.* at 397.

[17] *Id.* (quotation marks omitted).

[18] *Id.* (quotation marks omitted) (alterations in original).

[19] *Id.* (citing *Graham*, 490 U.S. at 396).

tackled him, wrestled his limbs, and limited themselves to trained, unarmed strikes that ceased once they secured Reeves.

Second, Reeves's injuries are minimal. Reeves was taken to Baylor, Scott & White Medical Center the following day where the only diagnosed injuries attributable to the officers' use of force were leg contusions, for which the medical staff proscribed Motrin.[20] Third, the officers tempered their use of force by employing only trained, unarmed strikes (which apparently caused little to no physical damage) and ceasing all strikes as soon as they secured Reeves.

Fourth, the severity of the security problem was not insignificant. Reeves argues that he was unarmed, outside the immediate presence of other detainees, and highly unlikely to have been able to escape the detention center altogether. True; however, Reeves was still roaming unsecured while actively damaging property and injuring officers. Security in a jail setting can be fragile and even small chaotic events can snowball into larger disasters if unaddressed. Here, the officers perceived a significant security problem.[21] Because *Kingsley* councils the Court to "account for the legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained" and "appropriately defer[] to policies and practices that in th[e] judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security," the Court will defer to their

---

[20] Doc. No. 71 at 70.

[21] *See* Declaration of Detention Officer Hernandez, Doc. No. 71 at 31 ("Because of the security and injury risks associated with [Reeves's] actions, we needed to secure him on the ground.").

risk assessment.[22] This also applies to the fifth factor, the threat reasonably perceived by officers.

Finally, Reeves was actively resisting the officers. Reeves insists that he did not resist the officers' attempts to secure him but merely chose to remain kneeling on his hands and knees, rather than lay on the floor as directed, in order to protect his face from hitting the floor. As a detainee, however, Reeves has no authority to make that kind of executive decision. Even taking Reeves's explanation as true, refusing the officers' demands to lay on the floor with his arms and legs out, in this situation, is active resistance.

Given the application of the *Kingsley* factors here, the Court concludes that the use of force employed by *these* officers in *this* situation was not objectively unreasonable. Accordingly, because the officers use of force was not objectively unreasonable, they did not violate Reeves's 14th Amendment right to be free from excessive force.[23] Thus, Reeves's excessive force claim fails as a matter of law.

### C. Bystander Claim

Reeves also alleges a "bystander" section 1983 claim against each officer. The Fifth Circuit recognizes bystander liability under section 1983 where an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."[24] The implicit requirement here, however, is that an officer must be violating an

---

[22] *Kingsley*, 576 U.S. at 397 (quotation marks omitted) (alterations in original).
[23] *Id.* at 396–97.
[24] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

individual's constitutional rights. Because the Court determined that no officers violated Reeves's 14th Amendment right to be free from excessive force, there is accordingly no bystander liability here.[25]

### D. Malicious Prosecution, Sixth Amendment, Continued Seizure

Reeves further claims a series of constitutional violations stemming from his allegation that the officers made patently false statements regarding the detention center incident. The false representations allegedly occurred via Officer Franey's affidavit to the magistrate judge and the other officers' statements to Officer Franey, made for the purpose of creating that affidavit. Specifically, Reeves argues that the video footage clearly established that he did not assault the detention officers, and therefore the officers falsified information by reporting an assault. According to Reeves, this falsification caused him to be charged and prosecuted without probable cause, denied a fair trial (although the charges were voluntarily dismissed before a trial), and have his liberty impermissibly restricted all in violation of his 4th, 6th, and 14th Amendment rights.

The parties have spilt much ink weighing whether these rights exist under these circumstances in our Constitution. That analysis, however, is irrelevant because each constitutional claim rests on the premise that the information given was false. Here, the video makes clear that Reeves did assault the detention officers. Officer Franey's affidavit and the other officers' statements reflect the events

---

[25] Further, even if a constitutional violation had occurred, Officer Franey would still be free from bystander liability because he was not physically present at the scene. Textually speaking, bystanders must be standing by. *See id.* ("However, liability will not attach where an officer is not present at the scene of a constitutional violation.").

captured on video. Therefore, there is no genuine dispute of material fact as to whether the officers falsified information—they simply did not. Reeves's assorted constitutional claims fail as a matter of law because the officers cannot have violated his rights by falsifying information if the information they gave was not false.

### E. Officer Campbell

Reeves also named Officer Campbell, one of the detention officers involved in this incident, as a defendant. Officer Campbell was not added to this lawsuit until after the statute of limitations lapsed, due to difficulties identifying him. Officer Campbell moved to dismiss the suit as time barred. In the interest of judicial efficiency, the Court will not rule on this motion as there may be another issue that resolves the claim. The Court will, however, allow Officer Campbell to file a motion for summary judgment in light of this order.

### F. City of Garland

Finally, Reeves pled a section 1983 claim against the City of Garland arguing that its policy of allowing police and detention officers to regularly use excessive force caused the violation of his constitutional rights here. As a municipality, Garland can only be liable under section 1983 where the "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[26] It is well established, however, that "every *Monell* claim requires an underlying constitutional

---

[26] *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978).

violation."[27]  Here, because the Court already determined that Reeves's constitutional rights were not infringed, there is no underlying violation to serve as the basis for *Monell* liability against the City of Garland.  The City is entitled to dismissal as well.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the motion for summary judgment [Doc. No. 69] as to all claims against Officers Franey, Castellanos, Hernandez, and Carson, based on the finding that the defendant officers' conduct did not violate Reeves's constitutional rights.  Likewise, the Court **GRANTS** the City of Garland's motion to dismiss [Doc. No. 86] because there are no constitutional violations for *Monell* liability to attach to.  Finally, the Court refrains from ruling on Officer Campbell's motion to dismiss [Doc. No. 91] but will allow Officer Campbell to file a motion for summary judgment on or before October 19, 2020.

**IT IS SO ORDERED** this 29th day of September, 2020.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[27] *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (2017) (quotation marks omitted).